## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CALVIN GIBSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action File** |
| **v.** | ) | **No. _____** |
| | ) | |
| **WASH BOX, LLC d/b/a ECO EXPRESS** | ) | |
| **WASH and CECIL R. FRANCIS,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |
| | ) | |

### COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW, Plaintiff Calvin Gibson ("Mr. Gibson"), by and through undersigned counsel, and files this Complaint for Damages and Equitable Relief (this "Complaint") against Defendants Wash Box, LLC and Cecil R. Francis, showing the Court as follows:

### INTRODUCTION

1.

Mr. Gibson is a former employee of Defendant Wash Box LLC d/b/a Eco Express Wash ("Eco Express"), a car wash business, and its owner, Defendant Cecil Francis ("Francis") (collectively, "Defendants"). While working for Defendants, Mr. Gibson resided on real property owned by Eco Express and

situated directly adjacent to the Eco Express car wash. During the two years in which Mr. Gibson was employed by Defendants, Defendants took advantage of Mr. Gibson's close proximity by frequently requiring Mr. Gibson to work long hours for which he was not scheduled and failing to pay Mr. Gibson for his "off the clock" time. Additionally, though Mr. Gibson was enrolled in Eco Express's SIMPLE IRA plan, Defendants failed to timely and fully deposit the contributions withheld from Mr. Gibson's paychecks and ultimately failed to properly match those contributions per the terms of the plan. After Mr. Gibson's attempts to recover the unpaid wages and benefits due to him failed, Mr. Gibson resigned his employment. Thereafter, Defendants changed the locks on Mr. Gibson's residence and removed certain of Mr. Gibson's possessions.

2.

Based upon the foregoing and the facts set forth below, Defendants violated Mr. Gibson's federal employment rights by failing to pay Mr. Gibson minimum wages and overtime compensation as required under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (the "FLSA"), and by failing to deposit and properly match contributions to Mr. Gibson's SIMPLE IRA account, in breach of Defendant's duties and obligations under the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

3.

Additionally, Defendants' actions with respect to Mr. Gibson's wages and residence amount to breach of contract, unjust enrichment, conversion, wrongful eviction, trespass, and fraud.

4.

As a result of Defendants' wrongful conduct, Mr. Gibson seeks to recover unpaid overtime compensation, unpaid minimum wages, unpaid regular wages, FLSA liquidated damages, the recovery of benefits owed to him pursuant to ERISA, damages (including punitive damages) resulting from Defendants' breach of contract, fraud, conversion, and wrongful eviction, prejudgment interest, and attorneys' fees and costs. Additionally, Mr. Gibson brings this action to enjoin acts and practices which violate Title I or ERISA and to obtain other relief as may be appropriate to redress violations and enforce the terms of ERISA and the Plan.

## JURISDICTION AND VENUE

5.

This Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216(b), and 29 U.S.C. § 1132(e)(1). This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 (b) and (c) because the acts giving rise to this Complaint occurred within this District, and because this Court has personal jurisdiction over Defendants. Venue is also proper pursuant to 29 U.S.C. § 1131(e)(2) because the subject ERISA plan was administered in this district, the breach took place in this district, and the defendants reside in this district.

## THE PARTIES

7.

Plaintiff Calvin Gibson ("Mr. Gibson") is an individual and a resident of the State of Georgia.

8.

At all times material hereto, Mr. Gibson handled, sold, and/or worked on goods or materials that have been moved in or produced for commerce and was thus engaged in commerce during his employment with Defendants.

9.

At all times material hereto, Mr. Gibson was an "employee" of Defendants for purposes of the FLSA and ERISA.

10.

Defendant Wash Box, LLC d/b/a Eco Express Wash ("Eco Express") is a Domestic Limited Liability Company, organized under the laws of Georgia, with a principal office address of PO Box 4359, Atlanta, Georgia 30302. Eco Express operates and may be served with process at its physical/registered agent location, 10 Moreland Avenue SE, Atlanta, Georgia 30316.

11.

At all times material hereto, Eco Express was an "employer" of Mr. Gibson for purposes of the FLSA and ERISA.

12.

Eco Express established an employee benefit plan as defined under ERISA in the form of a "5304 Savings Incentive Match Plan for Employees of Small Employers (SIMPLE)" on or about June 24, 2014, of which Mr. Gibson was a participant (the "Plan").

13.

Defendant Cecil Francis ("Francis") is an individual and a resident of the State of Georgia. Francis is the owner, organizer, sole officer, and registered agent of Eco Express.

14.

At all times material hereto, Francis exercised control over significant aspects of the operations of Eco Express, including employee compensation and benefits, and Francis personally played a substantial role in causing the FLSA and ERISA violations set forth in this Complaint. As a result, Francis was an "employer" of Mr. Gibson for purposes of the FLSA, and Francis is jointly and severally liable to Mr. Gibson for damages under the FLSA.

15.

At all times material to this action, Eco Express and Francis were Mr. Gibson's "joint employer" for purposes of the FLSA due to an arrangement between the individual Defendants to share the services of Mr. Gibson, and/or because one of the individual Defendants acted directly or indirectly in the interest of the other Defendant in relation to Mr. Gibson, and/or because the individual Defendants shared control of Mr. Gibson's employment, and/or because one Defendant controls the other Defendant.

16.

At all times material hereto, Defendant Francis exercised discretionary control over the management, administration, and assets of the Plan, and Francis was thus a fiduciary of the Plan for purposes of ERISA.

17.

Mr. Gibson was employed as a manager and general laborer by and for Defendants.  Defendant Eco Express owns the land on which Eco Express is operated, and also owns the land on which Mr. Gibson resided during his employment.  Defendant Francis is the sole owner and operator of Eco Express and served as Mr. Gibson's boss and landlord.  Defendant Francis, individually and through other single-member and jointly-owned entities, owns, manages, and develops real property using funds generated from Eco Express.  Through unified operation and/or common control, Defendants perform related activities for a common business purpose—the development and leasing of real property for commercial and residential purposes.  Each Defendant's operations are interdependent of and benefit from the other Defendant's operations. Income is shared between Defendants, and Defendants' employees and agents are often employed interchangeably between Defendants. The Defendants share in operational and managerial control.  Collectively, the Defendant-employers and other non-employer entities as set forth herein comprise an "enterprise" under the FLSA (the "Enterprise").

18.

At all times material hereto, the Enterprise had two or more employees who handled, sold, or otherwise worked on and with goods or materials that have been moved in or produced for commerce. The Enterprise's annual gross volume of sales made or business done was at least $500,000.00 during Mr. Gibson's employment. Thus, Defendants are an enterprise engaged in commerce or in the production of goods for commerce for purposes of the FLSA.

## FACTUAL ALLEGATIONS

19.

Mr. Gibson worked for Eco Express as a manager and general laborer beginning around March 2015 and ending at the time of his resignation on April 1, 2017.

20.

At the time of hiring Mr. Gibson, Defendants promised to pay him at the rate of $10.00 per hour. Additionally, Defendants agreed to allow Mr. Gibson to reside at the property located at 1191 Hosea L. William Dr., Atlanta, Georgia 30317 (the "Property") rent-free on the condition that (1) Mr. Gibson not ask Defendants to make repairs or fulfill other typical landlord duties; (2) Mr. Gibson be required to make any improvements on the Property at his own expense; and (3) Mr. Gibson

would be required to vacate the Property in the event Defendants decided to tear it down. No valid lease was ever executed by the Parties.

21.

For the first few months of Mr. Gibson's employment, Defendants paid Mr. Gibson "under the table" and did not provide him with paystubs setting forth the hours worked and amount paid. As a result, several months elapsed before Mr. Gibson discovered that Defendants were only actually paying him $7.35 per hour—$2.65/hour less than the $10.00 rate agreed upon.

22.

Subsequent to his discovery of Defendants' deceptive pay practices, Mr. Gibson asked to be placed on the Eco Express payroll. Although Defendants obliged, and began paying Mr. Gibson at the rate of $10 per hour, Mr. Gibson was only paid for a portion of the hours actually worked each week.

23.

Throughout Mr. Gibson's employment, Defendants regularly instructed Mr. Gibson to work "off the clock" or else required Mr. Gibson to respond to emergency or after-hours maintenance requests without pay.

24.

In some pay periods, Defendants altered Mr. Gibson's hours after the fact by unilaterally changing his clock-in and clock-out times in Eco Express's timekeeping and payroll systems to avoid paying Mr. Gibson for all hours actually worked by him.

25.

Although Defendants were aware of the fact that Mr. Gibson regularly worked in excess of 40 hours per week, Defendants failed to pay Mr. Gibson overtime compensation as required.

26.

Additionally, Mr. Gibson's wages were insufficient to compensate Mr. Gibson at the minimum hourly rate required by law in each week of his employment.

27.

On more than one occasion when Defendant Francis left town, Defendant Francis ordered Mr. Gibson to be "on call," and instructed Mr. Gibson that he was not permitted to leave his house in case he was needed at the car wash. In one such instance, Mr. Gibson worked for Defendants off the clock, and at Defendants' direction, for four ten-hour days. When Mr. Gibson asked to be paid for this time, Defendant Francis handed him $100 in cash.

28.

Defendants failed to make, keep, and preserve accurate records sufficient to determine the number of hours actually worked by Mr. Gibson.

29.

Defendants knowingly suffered or permitted Mr. Gibson to work more than 40 hours per week without overtime compensation and for less than the minimum wage.

30.

Defendants have not made a good faith effort to comply with the FLSA with respect to Mr. Gibson.

31.

At various points during his employment, Mr. Gibson complained about not being paid for his off the clock work and not receiving overtime compensation. In response to these complaints, Defendants began cutting the hours on Mr. Gibson's schedule and reducing the amount of time Mr. Gibson was permitted to work "on the clock," referencing Mr. Gibson's ability to reside on the Property rent-free as justification. Although the hours actually worked by Mr. Gibson did not change, Defendants ostensibly sought to protect themselves from liability under the FLSA

by purposefully ensuring Mr. Gibson's time and pay records reflected less than 40 hours worked each week.

32.

Unwilling to continue working without proper pay, Mr. Gibson resigned his employment on April 1, 2017.

33.

On April 2, 2017, Mr. Gibson arrived at his home to find that Defendant Francis had broken a window and kicked in a door to gain entry to the Property in order to change the locks and thereby prevent Mr. Gibson from re-entering his home.

34.

Defendant left a note (erroneously dated 03/03/2017) stating, in part, "Please contact management, as soon as possible, to arrange access to the property and notify management of your timetable to vacate."  A true and correct copy of the note is attached hereto as Exhibit A.

35.

Locked out of his home and unable to enter to care for his dogs or retrieve his belongings, Mr. Gibson filed a police report and sought the assistance of undersigned counsel.

36.

After multiple calls to Defendant Francis went unanswered, undersigned counsel was able to reach Francis on April 6, 2017, and Francis agreed to allow Mr. Gibson to retrieve the new keys to his home and remain on the Property until the end of the month. Francis further agreed not to enter the residence until after Mr. Gibson had moved out. A true and correct copy of the email exchange memorializing this agreement is attached hereto as Exhibit B.

37.

Almost immediately after reaching this agreement, Francis entered onto the Property when Mr. Gibson was not home, began removing Mr. Gibson's belongings—including various tools, a dining set, and the refrigerator Mr. Gibson purchased—and went through Mr. Gibson's personal effects. On April 12th, Mr. Gibson returned home to find that Francis had again entered the Property, without notice or valid excuse, this time to bolt down the windows. At some point prior to Mr. Gibson's agreed-upon move out date, Francis entered onto the property and let Mr. Gibson's dogs loose, two of which have not yet been located, to Mr. Gibson's great despair. On information and belief, Francis gave away some of Mr. Gibson's personal belongings to other third parties, including other employees of Eco Express.

38.

Prior to his resignation, in late 2015 or early 2016, Mr. Gibson elected to participate in Eco Express's SIMPLE IRA plan (the "Plan").

39.

The Plan permits participants to contribute a portion of their pay to the Plan through payroll deductions. Though Mr. Gibson initially elected to make salary reduction contributions of $50 to his individual Plan account from each paycheck, he changed this election to $150 per paycheck within a few weeks of his initial participation in the Plan.

40.

Per the Plan, Eco Express was required to match Mr. Gibson's contributions dollar-for-dollar up to 3% of Mr. Gibson's total annual compensation (including overtime compensation).

41.

In accordance with 29 CFR § 2510.3-102, participant contributions were required to be forwarded to the Plan on the earliest date on which such contributions could reasonably be segregated from Defendants' general assets.

42.

Initially, Defendants withheld salary reduction contributions from Mr. Gibson's paychecks but failed to provide information regarding the deductions on Mr. Gibson's paystubs. On information and belief, Defendants failed to ever deposit these initial participant contributions. Thereafter, Defendants began including information regarding Mr. Gibson's Plan contributions on his paystubs; however, Defendants continued to fail or refuse to make full and timely deposits of these contributions.

43.

From the time Mr. Gibson first enrolled in the Plan, until the date of Mr. Gibson's resignation, Defendants withheld at least $3,725.00 from Mr. Gibson's wages, which Mr. Gibson specifically requested be transferred to his Plan account. However, during the same time period, Defendants made only two deposits of Mr. Gibson's payroll deduction contributions, both of which concerned only employee contributions withheld for tax year 2016.

44.

Although Defendants deposited employer match contributions into the Plan for 2016, the dollar amount of these contributions was artificially low, as they were based upon the total compensation paid to Mr. Gibson in 2016, rather than the

amount of compensation Mr. Gibson should have received but for Defendants' failure to pay him as agreed and as required by law.

45.

For each paycheck issued to Mr. Gibson in 2017, Defendants withheld $150 as employee contributions to the plan; however, the total amount of $1050 withheld year-to-date was not deposited into Mr. Gibson's SIMPLE IRA account at any time before his resignation on April 1, 2017. When Mr. Gibson picked up his last paycheck and asked Defendant Francis about the $1050 in undeposited 2017 employee contributions, Defendant Francis responded: "Tell your lawyer to come and get it."

46.

Following his resignation, Mr. Gibson sent Defendants a demand letter in which he requested that Defendants deposit into the Plan (1) the contributions withheld from Mr. Gibson's pay in 2017, plus interest; and (2) the difference between the employer match contributions actually made and the match contributions which should have been made but for Mr. Gibson's artificially low annual compensation.

47.

Although Defendants deposited Mr. Gibson's 2017 payroll deduction contributions into his Plan account after receipt of Mr. Gibson's demand letter, Defendants have failed to deposit all payroll contributions withheld to date, failed to deposit additional funds to account for lost interest, and failed to deposit additional employer match contributions owed.

**COUNT ONE**
**(FLSA – OVERTIME COMPENSATION)**

48.

Mr. Gibson realleges and incorporates Paragraphs 1 through 47 of this Complaint, as if fully set forth herein.

49.

At all times relevant hereto, Mr. Gibson was a non-exempt employee of Defendants for purposes of the FLSA. Thus, Defendants were obligated to pay Mr. Gibson at least one and one-half times his regular rate for each hour worked in excess of 40 hours per week.

50.

By failing to pay Mr. Gibson overtime compensation in accordance with § 207 of the FLSA, and by failing to make, keep, and preserve accurate records concerning Mr. Gibson's employment, despite knowledge of Mr. Gibson's status

as a non-exempt employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

51.

As a result of Defendants' willful violations of the FLSA's overtime provisions, Mr. Gibson is entitled to damages, including, without limitation, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

**COUNT TWO**
**(FLSA – MINIMUM WAGE)**

52.

Mr. Gibson realleges and incorporates Paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

53.

At all times relevant hereto, Mr. Gibson was a non-exempt employee for purposes of the FLSA. Thus, Defendants were obligated to pay Mr. Gibson at a rate not less than the minimum wage of $7.25 per hour.

54.

By failing to properly pay Mr. Gibson in accordance with § 206 of the FLSA, and by failing to make, keep, and preserve records sufficient to determine Mr. Gibson's wages and hours, despite knowledge of Mr. Gibson's status as a non-

exempt employee, Defendants willfully, intentionally, knowingly, and/or recklessly violated the FLSA, in bad faith.

55.

As a result of Defendants' willful violations of the FLSA's minimum wage provisions, Mr. Gibson is entitled to damages, including, without limitation, unpaid wages sufficient to compensate Mr. Gibson at the minimum wage rate for all hours worked, liquidated damages, attorneys' fees, and costs.

**COUNT THREE**
**(BREACH OF CONTRACT – REGULAR WAGES)**

56.

Mr. Gibson realleges and incorporates Paragraphs 1 through 55 of this Complaint, as if fully set forth herein.

57.

Defendants initially agreed to pay Mr. Gibson at the hourly rate of $10.00. Beginning in February 2017, Defendants agreed to pay Mr. Gibson at the hourly rate of $11.00.

58.

By paying Mr. Gibson only $7.35 per hour for the first few months of his employment, and by failing to pay Mr. Gibson for each hour actually worked at the agreed upon rate thereafter, Defendants breached their agreement with Mr. Gibson.

59.

As a result of Defendants' breach of contract, Mr. Gibson is entitled to damages, including pre-judgment interest, in an amount to be determined at trial.

**COUNT FOUR**
**(UNJUST ENRICHMENT)**

60.

Mr. Gibson realleges and incorporates Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

61.

During the time he was employed by Defendants, Mr. Gibson provided valuable services for the benefit of Defendants, and Defendants accepted these services.

62.

Mr. Gibson expected compensation at the time he rendered services to Defendants.

63.

Although Defendants have enjoyed the benefits of Mr. Gibson's services, Defendants have failed to pay Mr. Gibson the full value of the benefits and services received.

64.

As a result, Defendants have been unjustly enriched by Mr. Gibson, and Defendants should be required in equity to compensate Mr. Gibson for the benefits conferred, in an amount to be determined at trial.

**COUNT FIVE**
**(WRONGFUL EVICTION)**

65.

Mr. Gibson realleges and incorporates Paragraphs 1 through 64 of this Complaint, as if fully set forth herein.

66.

Defendant Eco Express owns the property located at 1191 Hosea L. William Dr., Atlanta, Georgia 30317 (the "Property"), and Defendant Francis has assumed the role of landlord and/or property manager with respect to the Property.

67.

Defendants agreed to allow Mr. Gibson to reside on the Property, and Mr. Gibson did reside on the Property for over two years, but no valid written lease agreement was ever executed.

68.

As a Georgia tenant without a valid lease agreement, Mr. Gibson was entitled to remain in the Property for 60 days following Defendants' notice to vacate.

69.

Without prior notice to Mr. Gibson or Mr. Gibson's consent, Defendant Francis broke a window in order to gain entry to the Property and changed the locks to prevent Mr. Gibson from re-entering. After agreeing to let Mr. Gibson re-enter the Property several days later, Defendants repeatedly entered upon the Property without Mr. Gibson's permission and removed Mr. Gibson's belongings therefrom.

70.

Defendants failed to commence a dispossessory action and failed to obtain a writ of possession prior to denying Mr. Gibson entry to the Property.

71.

Defendants wrongfully evicted Mr. Gibson in contravention of O.C.G.A. § 44-7-50.

72.

As a result of Defendants' wrongful conduct, Mr. Gibson has suffered damages, and is entitled to an award of compensatory damages in an amount to be determined at trial.

73.

Because Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Mr. Gibson is also entitled to an award of punitive damages in an amount to be determined at trial.

**COUNT SIX**
**(CONVERSION)**

74.

Mr. Gibson realleges and incorporates Paragraphs 1 through 73 of this Complaint, as if fully set forth herein.

75.

By removing Mr. Gibson's personal belongings from the Property prior to the time Mr. Gibson vacated the property, and by failing to return this property, Defendants have stolen and converted Mr. Gibson's property to their own use and benefit.

76.

As a result of Defendants' conversion, Mr. Gibson is entitled to damages, including punitive damages, in an amount to be determined at trial.

## COUNT SEVEN
## (TRESPASS)

77.

Mr. Gibson realleges and incorporates Paragraphs 1 through 76 of this Complaint, as if fully set forth herein.

78.

Defendants forcibly ejected their tenant, Mr. Gibson, from the Property without resort to legal process.

79.

By entering upon the Property against Mr. Gibson's will and without benefit of legal process or excuse, Defendants committed the offense of trespass.

80.

As a result of Defendants' trespass, Mr. Gibson is entitled to damages, including punitive damages, in an amount to be determined at trial.

## COUNT EIGHT
## (FRAUD)

### 81.

Mr. Gibson realleges and incorporates Paragraphs 1 through 80 of this Complaint, as if fully set forth herein.

### 82.

Following Defendants' wrongful eviction of Mr. Gibson, on April 6, 2017 the Parties reached the agreement memorialized by the email exchange attached hereto as Exhibit B.

### 83.

Pursuant to this agreement, Mr. Gibson would be allowed to remain on the Property until April 30, 2017; Defendants were not permitted to enter the Property prior to the agreed-upon vacate date; and Defendants were not permitted to remove Mr. Gibson's personal property from the Property.

### 84.

In reliance on his agreement with Defendants, Mr. Gibson continued to reside on the Property until the end of April, and did not take precautions to immediately vacate the Property and thereby prevent Defendants' theft and invasion of privacy.

85.

Almost immediately after reaching the agreement regarding Mr. Gibson's possession of the Property and move out date, Defendant Francis entered upon the Property and began rifling through and removing Mr. Gibson's personal effects. This trespass and breach of contract occurred multiple times over the 24-day period in which the Agreement was in effect.

86.

Defendants' conduct reflects that Defendants never intended to honor their promises or uphold their end of the agreement at the time their promises were made.

87.

By intentionally misrepresenting that Defendants would not enter the Property until the time Mr. Gibson had vacated and would not remove Mr. Gibson's personal belongings, Defendants defrauded Mr. Gibson, to his detriment.

88.

As a result of Defendants' fraud, Mr. Gibson is entitled to damages in an amount to be determined at trial.

## COUNT NINE
## (ERISA - IMPROPER ADMINISTRATION OF PLAN)

### 89.

Mr. Gibson realleges and incorporates Paragraphs 1 through 88 of this Complaint, as if fully set forth herein.

### 90.

The Eco Express SIMPLE IRA Plan (the "Plan") is an employee benefit plan subject to ERISA.

### 91.

Mr. Gibson was a participant in the Plan at all times material hereto.

### 92.

29 U.S.C §§ 1132 (a)(1)(B) and (a)(3) collectively provide that a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or for other appropriate equitable relief to redress violations of ERISA or to enforce any provisions of ERISA or of the Plan.

### 93.

29 U.S.C. § 1132 (a)(1)(A) allows a participant to recover statutory damages for the failure to disclose certain documents to employee participants.

94.

Defendants failed to property administrate the Plan and therefore denied Mr. Gibson benefits under the Plan, in violation of ERISA, by:

a. Failing to provide Mr. Gibson with documents required to be disclosed;

b. Failing to notify Mr. Gibson of his annual right to modify his salary reduction contribution election;

c. Failing to deposit Mr. Gibson's salary reduction contributions into Mr. Gibson's Plan account as directed by Mr. Gibson timely, accurately, and in the full amounts withheld from Mr. Gibson's pay;

d. Failing to deposit employer match contributions into Mr. Gibson's plan account timely, accurately, and in the full amounts required under the Plan;

e. Reducing the amount of Mr. Gibson's stated compensation with the intent to deprive Mr. Gibson of the full amount of employer match contributions to which Mr. Gibson is entitled; and

f. Failing to deposit interest lost on delayed or otherwise untimely contributions to Mr. Gibson's plan account.

95.

As a result of Defendants' breaches and violations of ERISA and of the Plan terms, Mr. Gibson is entitled to recover all benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, and to obtain other appropriate equitable relief to redress Defendants' violations and enforce the terms of the Plan.

96.

Specifically, Mr. Gibson seeks an accounting to determine the full extent of the benefits denied to him through Defendants' various breaches of their contractual and statutory duties and, further, seeks full restitution of the benefits denied, including restitution of all investment income and interest that would have been generated had appropriate employee and employer matching contributions been made as required.

97.

In addition to the recovery of benefits and other appropriate equitable relief, Mr. Gibson seeks statutory damages for Defendants' failures to provide him with all information required to be disclosed under ERISA and related regulations, as well as reasonable attorneys' fees and costs.

## COUNT TEN
## (ERISA – BREACH OF FIDUCIARY DUTY)

### 98.

Mr. Gibson realleges and incorporates Paragraphs 1 through 97 of this Complaint, as if fully set forth herein.

### 99.

Mr. Gibson's salary reduction contributions, withheld by Defendants for payment into Mr. Gibson's Plan account, are Plan assets. 29 C.F.R. § 2510.3-102(a).

### 100.

Defendants each exercised control over Plan assets and each exercised discretionary control over the administration and management of the Plan. Thus, each Defendant was a "fiduciary" and "party in interest" of the Plan for purposes of ERISA.

### 101.

Defendants routinely withheld wages from Mr. Gibson's pay as salary reduction contributions to Mr. Gibson's Plan account without depositing these contributions. Defendants deposited some employee contributions, but none of the deposits were timely, and Defendants failed to follow proper voluntary correction measures upon Mr. Gibson's requests. Additionally, Defendants have failed to

properly calculate the amount of employer match contributions to which Mr. Gibson is entitled, and have failed to make proper and timely deposits of employer match contributions into Mr. Gibson's Plan account.

102.

By causing, allowing, or engaging in the acts or omissions set forth herein, including appropriating Plan assets for their own benefit and use, Defendants breached their fiduciary obligations under ERISA by:

a. Failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of 29 U.S.C. § 1104(a)(1)(A);

b. Failing to discharge their duties with respect to the Plan with the requisite degree of care, skill, and prudence, in violation of 29 U.S.C. § 1104(a)(1)(B);

c. Causing the Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of any assets of the Plan, in violation 29 U.S.C. § 1106(a)(1)(D);

d. Dealing with the assets of the Plan in their own interest and for their own account, in violation of § 29 U.S.C. § 1106(b)(1);

e. Acting in an individual or other capacity in transactions involving the Plan on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of 29 U.S.C. § 1106(b)(2); and

f. Acting in an individual or other capacity in transactions allowing assets of the Plan to inure to the benefit of an employer, in violation of 29 U.S.C. § 1106(c)(1).

103.

As a result of the foregoing breaches of fiduciary duties, Defendants caused losses to the Plan and to Mr. Gibson's individual Plan account, for which Defendants are personally liable under ERISA, and Mr. Gibson is entitled to restitution, equitable relief, injunctive relief, and attorneys' fees.

**COUNT ELEVEN**
**(ATTORNEYS' FEES AND COSTS)**

104.

Mr. Gibson realleges and incorporates Paragraphs 1 through 103 of this Complaint, as if fully set forth herein.

105.

As set forth above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Mr. Gibson unnecessary trouble and expense.

106.

As a result of Defendants' conduct, Mr. Gibson is entitled to recover expenses of litigation pursuant to O.C.G.A. § 13-6-11 and other applicable state and federal law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Gibson prays that the Court:

(a)     Enter judgment in favor of Mr. Gibson and against Defendants for all damages and relief allowed by law;

(b)     Order an accounting of contributions and other deposits that should have been made to Mr. Gibson's Plan account by Defendants;

(c)     Order each Defendant, jointly and severally, to restore all losses (including interest) to Mr. Gibson's Plan account and to disgorge to the Plan all profits or other unjust enrichment resulting from Defendants' breach of fiduciary duties;

(d)     Enjoin Defendants from serving as fiduciaries to any ERISA plans in the future;

(e)     Award Mr. Gibson litigation expenses and costs against Defendants, including attorneys' fees, pursuant to applicable state and federal law; and

(f)     Provide such other and further relief as this Court deems just and proper.

Respectfully submitted this 30th day of May, 2017.

*/s/ Michelle L. Wein*
MICHELLE L. WEIN
Georgia Bar No. 385424
3340 Peachtree Road NE, Ste. 2570
Atlanta, Georgia 30326
(404) 981-6679 (telephone)
(470) 276-3033 (facsimile)
mwein@mweinlaw.com
*Counsel for Plaintiff*