## GENERAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT

THIS GENERAL MUTUAL RELEASE AND SETTLEMENT AGREEMENT ("Agreement") is made and entered into by and between Calvin Gibson ("Gibson"), the Plaintiff, and Wash Box, LLC ("Wash Box") and Cecil R. Francis ("Francis"), collectively referred to as "Defendants".  Plaintiff and Defendants may be referred to herein as the "Parties."

### WITNESSETH

WHEREAS, Gibson filed a lawsuit against Defendants styled Calvin Gibson v. Wash Box, LLC, d/b/a Eco Express Wash and Cecil R. Francis; United States District Court; Northern District of Georgia; Atlanta Division; Civil Action 1:17-CV-01965-MHC, which is currently pending (the "Lawsuit"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 et seq., and under Georgia law for breach of contract, unjust enrichment, wrongful eviction, conversion, trespass, fraud, and costs and attorneys' fees.

WHEREAS, Defendants deny all of Gibson's claims, and therefore, deny any liability to Gibson;

WHEREAS, Defendants previously asserted counterclaims against Gibson, for which Gibson denies any liability to Defendants;

WHEREAS, Defendants have entered into this Agreement solely for the purpose of avoiding the burdens and expense of further legal proceedings, and the making of this Agreement is not intended to be, and shall not be construed as, an admission that Defendants or any other Releasee (as defined in paragraph 3) violated any federal, state, or local law (statutory or decisional), ordinance or regulation, or committed any wrong whatsoever against Gibson.

Defendants specifically deny that they have violated any federal, state, or local law (statutory or decisional), ordinance or regulation, or committed any wrong whatsoever against Gibson;

WHEREAS, Gibson and Defendants have agreed to resolve all disputes between them by entering into this General Mutual Release and Agreement;

WHEREAS, Defendants and Gibson desire to settle, fully and finally, all differences that Gibson could assert against Defendants, and/or that Defendants could assert against Gibson, including, but not limited to, those differences that were or could have been asserted arising out of this Lawsuit, his employment relationship and landlord-tenant relationship; and,

WHEREAS, this Agreement is contingent upon Court approval.

NOW, THEREFORE, in consideration of the special monetary consideration and the mutual promises contained herein, Defendants and Gibson agree as follows:

1.      Defendants agree to make payment to Gibson in the total sum of Eighty-Seven Thousand Five Hundred Dollars ($87,500.00) (the "Settlement Amount"). This payment is in full satisfaction of all claims of Gibson asserted against Defendants in the Lawsuit or which he could have been asserted against Defendants.  Gibson acknowledges that payment of the Settlement Amount is contingent on approval of this Agreement by the Court and that, but for his execution of this Agreement, Gibson would otherwise not be entitled to the Settlement Amount.  Payment of the Settlement Amount is further contingent on Gibson and his counsel providing IRS W9 forms to Defendants.

Gibson and his counsel shall have sole responsibility for the allocation, if any, of the payments among themselves, and Defendants shall have no liability or responsibility whatsoever for any allocation of the payment.

The Parties acknowledge and agree that each Party shall be solely responsible for any and all tax liability, penalty, or interest that may be owed by such Party in connection with the Settlement Amount.  Gibson has not in any way relied upon Defendants as to any legal or tax advice as to the allocation or taxability of the settlement payment.  Instead, Gibson has relied entirely on the advice of his own tax advisor(s).

Defendants shall pay the Settlement Amount as follows:

A.  Defendants shall pay the total amount of Seven Thousand Five Hundred Dollars ($7,500.00) to Calvin Gibson in satisfaction of the Partial Judgment entered March 15, 2018 [Doc. 36].  This payment must be delivered to Gibson's counsel at the offices of Cohan Law Group, located at 3340 Peachtree Rd. NE, Tower 100, Suite 2570, Atlanta, GA 30326, such that it is actually received on July 19, 2019.  Michelle Wein, Cohan Law Group, LLC, shall hold this amount in trust for Gibson pending the Court's approval of this Agreement;

B.  Defendants shall pay the total amount of Forty-Two Thousand Five Hundred Dollars ($42,500.00) to Cohan Law Group, LLC, such that this amount is actually received on or before the later of (1) July 26, 2019 at noon; or (2) five business days following entry of the Court's order approving this Agreement. This installment shall be allocated as follows:

a.  $12,000.00, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon

execution of this Agreement, shall be allocated as wages payable to Gibson;

    b.  $12,000.00 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

    c.  $18,500.00 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

C.  Defendants shall pay the total amount of Six Thousand Two Hundred Fifty Dollars ($6,250.00) to Cohan Law Group such that it is actually received on or before noon on August 26, 2019.  This installment shall be allocated as follows:

    a.  $1,548.85, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon execution of this Agreement, shall be allocated as wages payable to Gibson;

    b.  $1,548.85 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

    c.  $3,152.30 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

D.  Defendants shall pay the total amount of Six Thousand Two Hundred Fifty Dollars ($6,250.00) to Cohan Law Group such that it is actually received on or before noon on September 26, 2019.  This installment shall be allocated as follows:

a. $1,548.85, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon execution of this Agreement, shall be allocated as wages payable to Gibson;

b. $1,548.85 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

c. $3,152.30 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

E. Defendants shall pay the total amount of Six Thousand Two Hundred Fifty Dollars ($6,250.00) to Cohan Law Group such that it is actually received on or before noon on October 26, 2019.  This installment shall be allocated as follows:

a. $1,548.85, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon execution of this Agreement, shall be allocated as wages payable to Gibson;

b. $1,548.85 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

c. $3,152.30 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

F. Defendants shall pay the total amount of Six Thousand Two Hundred Fifty Dollars ($6,250.00) to Cohan Law Group such that it is actually received on

or before noon on November 26, 2019.  This installment shall be allocated as follows:

    a.  $1,548.85, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon execution of this Agreement, shall be allocated as wages payable to Gibson;

    b.  $1,548.85 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

    c.  $3,152.30 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

G.  Defendants shall pay the total amount of Six Thousand Two Hundred Fifty Dollars ($6,250.00) to Cohan Law Group such that it is actually received on or before noon on December 26, 2019.  This installment shall be allocated as follows:

    a.  $1,548.85, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon execution of this Agreement, shall be allocated as wages payable to Gibson;

    b.  $1,548.85 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

    c.  $3,152.30 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

H. Defendants shall pay the total amount of Six Thousand Two Hundred Fifty Dollars ($6,250.00) to Cohan Law Group such that it is actually received on or before noon on January 26, 2020.  This installment shall be allocated as follows:

a. $1,548.85, less legally required withholdings based on the IRS Form W-4 already on file with Defendants or provided to Defendants upon execution of this Agreement, shall be allocated as wages payable to Gibson;

b. $1,548.85 shall be allocated as liquidated damages and other non-wage damages payable to Gibson; and

c. $3,152.30 shall be allocated as attorneys' fees and costs to Cohan Law Group, LLC.

I. Defendants will issue an IRS Form 1099 to each of Gibson and his counsel for all non-wage portions of the Settlement Amount as allocated above.

J. To the extent the Court imposes trial-related costs on the Parties, the Parties agree that Gibson shall be solely responsible for the payment of those costs.

2.    Within ten (10) business days from the date the Court approves this Agreement, Defendants shall provide, or cause the rightful owners to provide, to Gibson Limited Warranty Deeds conveying good and marketable title to two properties commonly known as 1853 Glenmar Dr., Decatur, GA 30032 and 28 Daleview Dr. SE, Atlanta, GA 30315, and further described in the attached Exhibit 1 (the "Properties").  Francis warrants and represents that the Grantors identified in the said Limited Warranty Deeds hold good and marketable title to the Properties,

free and clear and unencumbered, and that each of them is authorized to convey the Properties as part of this Agreement.  Cohan Law Group, LLC will hold the two Limited Warranty Deeds in escrow as security for payment of the Settlement Amount as described in Paragraph 1.  In the event Defendants default by failing to make any payment as agreed, Cohan Law Group is authorized and shall deliver the Limited Warranty Deeds to Gibson as full accord and satisfaction for any remaining payments under this Agreement.  If Defendants make all of the Payments described in Paragraph 1, without default, then and in that event Cohan Law Group is authorized and shall return the Limited Warranty Deeds to Defendants, through their counsel, K.P. Reddy.

3.      Gibson agrees to immediately file a Satisfaction of Judgment for the Judgment entered by the Court on March 5, 2019, in the amount of $8,531.40 (Docket No. 68).

4.      Within ten (10) business days following the Court's entry of an order approving this Agreement, Defendants shall file in the Magistrate Court of Dekalb County in Case No. 17D1142 a Pleading called "NOTICE" which Notice shall state that "Defendant, Calvin Gibson, voluntarily vacated the premises at issue in this matter at the termination of his lease term and did not fail to pay rent or other obligations to Plaintiff at any time."  The Notice shall be signed by Francis, as representative of Wash Box, LLC.

5.      Within five (5) business days following the Court's entry of an order approving this Agreement, Gibson shall file a Satisfaction of Judgment for the Partial Judgment entered by the Court on March 15, 2018 [Docket No. 36].

6.      Following timely receipt of all payments described in Paragraph 1, above, or delivery of the Limited Warranty Deeds due to default in payment, Gibson shall, within ten (10) business days file a Stipulation of Dismissal with Prejudice of the Lawsuit.

7.      This Agreement shall not be construed as an admission by Defendants or by any of Defendants' current or former officers, employees, predecessor companies, or agents of a violation of any federal, state, or local statute, regulation or other law, or of a violation of any right of Gibson, or of any other person.  Defendants specifically disclaim any liability to Gibson.

8.      Following timely receipt of all payments described in Paragraph 1, above or delivery of the Limited Warranty Deeds due to default in payment Gibson irrevocably and unconditionally releases and forever discharges Defendants, and any affiliated, related, or predecessor or successor corporation, their benefit plans and programs, and all of their present and former agents, directors, officers, employees, owners, representatives, insurers, administrators, trustees and attorneys (hereinafter jointly and severally referred to as the "Defendant Group"), or any of them, to the full extent permitted by law, from any and all losses, expenses, liabilities, claims, rights and entitlements of every kind and description (hereinafter collectively referred to as "Claims"), whether known or unknown, that he has now or may later claim to have had against Defendant Group arising out of anything that has occurred up through the date he signs this Agreement, including, without limitation, any Claims arising out of Gibson's relationship or termination of his relationship with Defendants.  This release includes, but is not limited to, any Claims that could have been asserted at any time, for bonuses or vacation pay owed, back pay, severance pay, reinstatement, personal injuries, breach of contract (express or implied), unjust enrichment, wrongful eviction, conversion, trespass, fraud, and costs and attorneys' fees

breach of any covenant of good faith and fair dealing (express or implied), violation of public policy, common law, or constitutional law, or for recovery of any losses or other damages to Gibson or property based on any alleged violation of local, state, or federal law, including, for example, but not limited to:  Fair Labor Standards Act codified at § 29 U.S.C. § 201 et seq.; O.C.G.A. § 23-3-122 et seq.;  42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (prohibiting discrimination on account of race, sex, color, national origin or religion); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (prohibiting discrimination on account of disabilities); the Uniformed Services Employment and Reemployment Rights Act of 1994, 28 U.S.C. § 4301 et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (prohibiting discrimination on account of age); the Employee Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Georgia Equal Employment for Persons with Disabilities Code, Ga. Code Ann. § 34-6A-1 et seq.; the Georgia Sex Discrimination in Employment Law, Ga. Code Ann. § 34-5-1 et seq and any other Claims under federal, state, or local statutory or common law including all claims for back pay, front pay, and it includes relief of any and all kinds, including, but not limited to, reinstatement, compensatory damages, punitive damages, liquidated damages, interests, costs, expenses, and/or attorneys' fees.  Gibson acknowledges that he may have sustained or may yet sustain damages, costs, or expenses that are presently unknown and that relate to Claims between Gibson and the Defendant Group, or any one of them.  Gibson expressly waives and relinquishes all rights and benefits which he may have under any state or federal statute or common law principle that would otherwise limit the effect of this

Agreement to Claims known or suspected prior to the date he signs this Agreement and does so understanding and acknowledging the significance and consequences of such specific waiver. Thus, for purposes of implementing a full and complete release and discharge of the Defendant Group, Gibson expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all Claims which he does not know or suspect to exist in his favor at the time of execution hereof and that this Agreement contemplates the extinguishment of any such Claims.  This release does not, however, waive claims arising from events occurring after Gibson signs this Agreement.

9.      Following timely receipt of all payments described in Paragraph 1, above, or delivery of the Limited Warranty Deeds due to default in payment, Defendant Group irrevocably and unconditionally releases and forever discharges Gibson and all of his heirs, executors, administrators, successors, assigned and attorneys (hereinafter jointly and severally referred to as the "Plaintiff Group"), or any of them, to the fullest extent permitted by law, of and from any and all losses, expenses, liabilities, claims, rights and entitlements of every kind and description (hereinafter collectively referred to as "Claims"), whether known or unknown, that they now have or may later claim to have had against Plaintiff Group arising out of anything that has occurred up through the date they sign this Agreement, including, without limitation, any Claims arising out of Gibson's relationship or termination of the relationship with Defendants.  The Claims include compensatory damages, punitive damages, liquidated damages, interests, costs, expenses, and/or attorneys' fees, and any other Claims under federal, state, or local statutory or common law.  Defendant Group acknowledges that they may have sustained or may yet sustain damages, costs, or expenses that are presently unknown and that relate to Claims between

Gibson and Defendant Group. Defendant Group expressly waives and relinquishes all rights and benefits which they may have under any state or federal statute or common law principle that would otherwise limit the effect of this Agreement to Claims known or suspected prior to the date they sign this Agreement and do so understanding and acknowledging the significance and consequences of such specific waiver. Thus, for purposes of implementing a full and complete release and discharge of the Plaintiff Group, Defendant Group expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all Claims which they do not know or suspect to exist in their favor at the time of execution hereof and that this Agreement contemplates the extinguishment of any such Claims. This release does not, however, waive claims arising from events occurring after Defendants sign this Agreement.

10.    Gibson affirms and agrees that by entering this Agreement, and other than the payments and obligations contained in this Agreement, Defendants have paid him for all hours worked, all salary or wages, commissions, bonuses, overtime, and any other form of compensation that he is entitled to arising out of his relationship with Defendants. Gibson further affirms and agrees that, upon receipt of the payments and fulfillment of the obligations contained in this Agreement, he has received all wages, overtime, interest, liquidated damages, costs and attorneys' fees to which he might be entitled. Gibson further agrees that he will not accept any such future payments as may be determined by any administrative agency or court, and if he receives such payments he will immediately return the payments to Defendants.

11.    The Parties to this Agreement agree, to the fullest extent permitted by law, not to commence, maintain, prosecute or participate in any action or proceeding against one another in any court or agency with respect to any act, omission, transaction or occurrence up to and

including the date of this Agreement.  The Parties warrant and represent that, other than the Lawsuit, no such action or proceeding with any court or agency has been commenced or is currently pending, and the Parties acknowledge and agree that any such action or proceeding would be released pursuant to this Agreement.  The parties agree that they will not hereafter file, pursue, or participate in any claims, grievances, complaints, charges, or lawsuits against one another alleging a violation of law based on anything that has occurred up to the present date, including any complaint filed on behalf of himself, itself or others.  The Parties further agree, to the fullest extent permitted by law, not to instigate, encourage, assist or participate in an action or proceeding commenced by anyone else against other Parties to this Agreement.  The Parties further agree and acknowledge that should any complaint, charge, or lawsuit be filed against the Parties, none of them will have any right to recover damages or obtain relief of any kind based on anything that has occurred up to the date of this Agreement.  The Parties agree that they will not seek or accept any award or settlement from any source or proceeding with respect to any claim or right covered by this Agreement.  If the parties receive any such monetary relief, they will immediately return the payments to the other Parties.  The Parties further acknowledge that this covenant not to sue is a material consideration for the other Parties to enter into this Agreement.  The Parties understand that if they breach this covenant not to sue provision, the other Parties will be entitled to damages for each breach, including costs and attorneys' fees.

12.     Gibson agrees he will not knowingly apply for or otherwise seek an independent contractor or employment position with Defendants and any affiliated, related, successor corporation of Defendants, or any other corporations or legal entities in which the owners of Defendants maintain an ownership interest.  In the event Gibson unknowingly applies, he will

resign immediately once it is brought to his attention.  Gibson further understands and agrees that Defendants and any affiliated, related, or successor corporation of Defendants, or any other corporations in which the owners of Defendants maintain an ownership interest, will not rehire or retain him in the future.

13.    For references, Gibson shall direct any inquiry to Francis.  In response to any request, Francis will confirm Gibson's position as a car washer, his last hourly wage of $11.00 per hour, and dates of employment from approximately January 31, 2016, until April 1, 2017.

14.    Francis and Gibson each agree that they will not disparage or impugn each other, at any time, to any person.

15.    Both parties represent and warrant that they have not assigned to any other person, and that no such person is entitled to assert on his or their behalf, any Claims based on or arising out of their relationship with one another.

16.    Each party affirms that the only consideration for signing this Agreement is the promises stated herein; that no other promise, representation, or agreement of any kind has been made to or with them by any person to cause them to sign this Agreement; and that they fully understand the meaning of this instrument.  This document contains the entire agreement between Gibson and Defendants and fully supersedes any and all prior agreements or understandings between them pertaining to the subject matter hereof, and the terms of this document are contractual and not a mere recital.

17.    No provision of this Agreement may be changed, altered, modified, or waived, except in writing and signed by Gibson and Defendants, which writing shall specifically reference this Agreement and the provisions which the parties intend to waive or modify.

18.     Each party acknowledges that they have been advised to seek the advice of an attorney and has been given a reasonable opportunity to consider it.  Each party acknowledges they have obtained all advice and counsel they need to understand each of the terms and conditions of this Agreement.

19.     This Agreement will be binding upon the parties hereto and upon their next of kin, heirs, administrators, representatives, executors, successors, and assigns, and will inure to the benefit of Gibson, Defendants and the Defendant Group and the Plaintiff Group, and each of them, and to their next of kin, heirs, administrators, representatives, successors, and assigns.

20.     This Agreement is made and entered into in the State of Georgia and will be interpreted, enforced, and governed under the laws of Georgia.  The language of all parts of this Agreement will in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

21.     Any dispute arising under this Agreement shall be filed in the Superior Court of DeKalb County, Georgia or the United States District Court for the Northern District of Georgia, Atlanta Division.  Each party agrees and consents to the exclusive venue and personal jurisdiction in these forums.

22.     Should any provision of this Agreement be declared or be determined by any court or arbitrator to be illegal or invalid, the validity of the remaining parts, terms, or provisions will not be affected, and the illegal or invalid part, term, or provision will be deemed not to be a part of this Agreement.

23.     The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed to constitute an executed original, even though not all signatures may appear on

the same counterpart.  The Parties agree that signed facsimiles or electronic copies have the same force and effect as originals.

24.     Time is of the essence as to every provision of this Agreement, including but not limited to the payments contemplated by Paragraph 1 of this Agreement.

25.     Each party acknowledges that:

HE HAS READ THIS AGREEMENT, AND HE UNDERSTANDS ITS TERMS AND CONDITIONS;

HE HAS HAD THE OPPORTUNITY TO OBTAIN ALL ADVICE AND INFORMATION HE DEEMS NECESSARY ABOUT MATTERS RELATING TO THIS AGREEMENT;

HE HAS NOT BEEN COERCED INTO SIGNING THIS AGREEMENT, AND HE VOLUNTARILY AGREES TO ABIDE BY ITS TERMS BECAUSE THEY ARE SATISFACTORY TO HIM;

OTHER THAN AS SET FORTH IN THIS AGREEMENT, NO PROMISE OR INDUCEMENT OF ANY KIND HAS BEEN MADE TO ANY OF THEM BY ANYONE ELSE TO CAUSE THEM TO SIGN THIS AGREEMENT; AND,

THE MUTUAL RELEASES, OBLIGATIONS, UNDERTAKINGS, WARRANTIES, REPRESENTATIONS, AND PAYMENTS THAT EACH WILL RECEIVE AS A RESULT OF SIGNING THIS AGREEMENT IS ADEQUATE AND IS THE ONLY CONSIDERATION FOR THIS AGREEMENT.

_____
CALVIN GIBSON

HE HAS NOT BEEN COERCED INTO SIGNING THIS AGREEMENT, AND HE VOLUNTARILY AGREES TO ABIDE BY ITS TERMS BECAUSE THEY ARE SATISFACTORY TO HIM;

OTHER THAN AS SET FORTH IN THIS AGREEMENT, NO PROMISE OR INDUCEMENT OF ANY KIND HAS BEEN MADE TO ANY OF THEM BY ANYONE ELSE TO CAUSE THEM TO SIGN THIS AGREEMENT; AND,

THE MUTUAL RELEASES, OBLIGATIONS, UNDERTAKINGS, WARRANTIES, REPRESENTATIONS, AND PAYMENTS THAT EACH WILL RECEIVE AS A RESULT OF SIGNING THIS AGREEMENT IS ADEQUATE AND IS THE ONLY CONSIDERATION FOR THIS AGREEMENT.

CALVIN GIBSON
Date: July 19, 2019


WASH BOX, LLC


_____
CECIL R. FRANCIS – OWNER/MEMBER
Date: _____



_____
CECIL R. FRANCIS
Date: _____

Date: _____

WASH BOX, LLC

_____
CECIL R. FRANCIS – OWNER/MEMBER
Date: __07/19/2019_____

_____
CECIL R. FRANCIS
Date: __07/19/2019_____

EXHIBIT 1



Deed Book 20182 Pg 355
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

**EXHIBIT "A"**

**Legal Description**

All that tract or parcel of land lying and being in Land Lot 165 of the 15th District of Dekalb County, Georgia, and being more particularly described as follow:

BEGINNING at an iron pin located on the west aide of Glenmar Drive 210.00 feet south, as measured along the west side of Glenmar Drive, from the southwest corner of the intersection of Glenmar Drive and Glenwood Road; thence running south along the west side of Glenmar Drive 100.00 feet to an iron pin; thence west and forming an interior angle of 87 degrees 41 minutes 30 seconds with the preceding course 149.95 feet to an iron pin on the west line of said Land Lot 165 (east line of Land Lot 166 of said District and County); thence north along the west line of said Land Lot 165 (east line of said Land Lot 166) and forming an interior angle of 92 degrees 13 minutes 40 seconds with the preceding course 100.00 feet to an iron pin; thence east and forming an interior angle of 87 degrees 46 minutes 10 seconds with the preceding course 149.81 feet to the iron pin located on the west side of Glenmar Drive and the point of beginning, the west side of Glenmar Drive forming an interior angle of 92 degrees 15 minutes 40 seconds with the last preceding course, being a parcel of land consisting of 14,997 square feet as shown on survey prepared by C.S. Mercer, Jr., Registered Land Surveyor, dated March 23, 1976.

7-1474

Deed Book 48231 Pg 511
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

# EXHIBIT "A"

28 Daleview Drive

All that tract or parcel of land lying and being in Land Lot 58 of the 14th District of Fulton County, Georgia being Lot 14, Block "A" of the Subdivision of the property of George Muse Estate, recorded in Plat Book 17, Page 141, Fulton County records, and more particularly described as follows:

BEGINNING at a point on the north side of Daleview Drive three hundred two and five-tenths (302.5) feet West from the intersection of the North side of Daleview Drive; if extended, with the West side of Olive Street, if extended , said point being the southeast corner of Lot 15 of said subdivision; thence North with the East line of said Lot 15, one hundred fifty (150) feet to the northeast corner of said Lot 15 and the South line of Lot 4; thence East with the South line of Lot 4; fifty (50) feet to the northwest corner of Lot 13 of said subdivision; thence South with the West line of Lot 13 of said subdivision one hundred fifty (150) feet to the North line of Daleview Drive; thence West with the North line of Daleview Drive fifty (50) feet to the beginning point; being improved property known as 28 Daleview Drive.

Tax ID: 14-0058-0001-018-3